JOHN W. HUBER, United States Attorney (#7226)
JACOB J. STRAIN, Assistant United States Attorney (#12680)
CARL D. LESUEUR, Assistant United States Attorney (#16087)
TYLER L. MURRAY, Assistant United States Attorney (#10308)
Attorneys for the United States of America
111 South Main Street, Ste. 1800 • Salt Lake City, Utah 84111
Telephone: (801) 524-5682

FILED
U.S. DISTRICT COURT
2019 MAY -8 P 2: 39
DISTRICT OF UTAH
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>GAYLEN DEAN RUST,<br>DENISE GUNDERSON RUST, and<br>JOSHUA DANIEL RUST<br><br>Defendants. | FELONY INDICTMENT<br><br>Count 1: 18 U.S.C. § 1349 (Wire Fraud Conspiracy)<br><br>Count 2: 18 U.S.C. § 1956(h) (Money Laundering Conspiracy)<br><br>Counts 3-4: 15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. § 240.10b-5 (Securities Fraud)<br><br>Counts 5-6: 18 U.S.C. § 1957 (Money Laundering) |

The Grand Jury alleges:

Case: 2:19-cr-00164
Assigned To : Parrish, Jill N.
Assign. Date : 5/8/2019
Description:

**Count 1**
**18 U.S.C. § 1349**
**(Wire Fraud Conspiracy)**

I. **BACKGROUND**

At all times relevant to this Felony Indictment:

1.      Defendants GAYLEN DEAN RUST and DENISE GUNDERSON RUST were residents of Davis County Utah. Defendant JOSHUA DANIEL RUST was a resident of Salt Lake County, Utah.

2.      Rust Rare Coin, Inc. ("RRC"); R Legacy Entertainment LLC; R Legacy Racing

Inc.; R Legacy Investments LLC; R Legacy Ranch; and Legacy Music Alliance were companies doing business in the state of Utah.

3. Defendant GAYLEN DEAN RUST owned, operated, and managed all aspects of the above listed companies, among others.

4. Defendant DENISE RUST was listed in corporate filings as the secretary of RRC and had signatory authority on several of RRC bank accounts. Defendant DENISE RUST assisted in the operations of RRC; R Legacy Racing Inc.; R Legacy Investments LLC; and R Legacy Ranch.

5. Defendant JOSHUA RUST was the manager of RRC from 2004 to November 15, 2018. Defendant JOSHUA RUST had signatory authority on several of RRC bank accounts and managed the day to day operations of the RRC coin shop.

## II.   THE CONSPIRACY

6. Beginning in and around 1996 and continuing to and around November 15, 2018, within the Central Division of the District of Utah and elsewhere,

**GAYLEN DEAN RUST,**
**DENISE GUNDERSON RUST, and**
**JOSHUA DANIEL RUST**

defendants herein, did knowingly and willfully combine, conspire, confederate, and agree with each other, with interdependence among the members of the conspiracy, to commit a fraud crime listed in United States Code, Title 18 Chapter 63, namely: Wire Fraud in violation of Title 18, United States Code, Section 1343.

## III.   OBJECT OF THE CONSPIRACY

7. It was the object of the conspiracy for the defendants GAYLEN RUST, DENISE RUST, and JOSHUA RUST to defraud investors and potential investors by offering and inducing them to purchase investments in a silver trading program through false statements,

misrepresentations, deception, fraudulent conduct, and omissions of material facts; and thereafter cause the money to be diverted for their own personal use and benefit.

### IV. MANNER AND MEANS OF THE CONSPIRACY

8. The manner and means by which defendants GAYLEN RUST, DENISE RUST, and JOSHUA RUST sought to accomplish the objects and purpose of the conspiracy included, among other things, the following:

9. GAYLEN RUST offered and sold investments in a silver trading program to at least 500 investors located throughout the United States and collected approximately $200 million from the same. GAYLEN RUST claimed the silver trading program involved the trading of significant amounts of physical silver bullion (rather than silver futures).

10. In furtherance of the conspiracy, defendant GAYLEN RUST made one or more of the following false and fraudulent statements of material fact to investors and potential investors, including but not limited to the following:

   a) That 100% of investor funds would be used to buy actual, physical silver; when in fact, defendants GAYLEN RUST, DENISE RUST, and JOSHUA RUST diverted nearly all investor funds received to unrelated businesses, to personal uses, and to make payments to other investors;

   b) That a minimum investment amount was required to open an account and cover the fees associated with the trading account; when in fact, defendants GAYLEN RUST, DENISE RUST, and JOSHUA RUST did not trade silver in the manner described to investors;

   c) That all silver bullion purchased with investor funds was stored at Brink's Global Services USA ("Brink's") in either Salt Lake City or Los Angeles, with 85% of investor silver being stored in Salt Lake City; when in fact, RRC had little or no silver stored at Brink's;

   d) That RRC was storing almost $80 million of silver at Brink's; when in fact, Brink's stored little or no silver for RRC, and Brink's had not held any silver for RRC or any defendant-related entities since late 2016;

   e) That only half the amount of silver bought for the investor would be "traded"

with the other half stored for safekeeping to minimize investment risk; when in fact, there was no significant silver trading occurring and investor money was not used to purchase silver;

f) That all of the silver trades were conducted through an account in the name of RRC at HSBC Bank Plc ("HSBC"), and that an algorithm was generated by HSBC that enabled defendant GAYLEN RUST to sell at the point when the price of silver began to fall and to buy the silver back just before the price recovered; when in fact, HSBC has never maintained an account in the name of defendant GAYLEN RUST or RRC;

g) That the profit generated in trades would be used to repurchase a larger amount of silver at the lower price, thereby continually increasing the amount of silver for investors; when in fact, there was no silver trading occurring through HSBC;

h) That by using HSBC algorithms, the silver trading program has never experienced a losing month, much less a losing year, that the worst year had generated a 12% return, and that the average rate of return was 20 to 25% per year; when in fact, defendant GAYLEN RUST traded almost no silver and he had no trading mechanism that could generate such returns; and

i) That there is no management fee associated with the investment, but that defendant GAYLEN RUST would compensates himself by keeping partial shares of silver left over from the trades; when in fact, GAYLEN RUST, DENISE RUST, and JOSHUA RUST used investor funds for their own personal use and benefit and also used investor funds for unrelated businesses that all operated at significant losses.

11. It was a part of the conspiracy that defendant GAYLEN RUST communicated his misrepresentations regarding his scheme, both directly and indirectly, to investors and potential investors through various means including meetings, phone calls, mailings, and emails.

12. Defendant GAYLEN RUST made such misrepresentations to investors and potential investors with the knowledge that such information would be disseminated to other investors and potential investors.

13. In furtherance of the conspiracy, defendants GAYLEN RUST, DENISE RUST, and JOSHUA RUST failed to disclose to investors the following material facts, among others:

a) Investor funds would be used for purposes other than to invest in silver and

trading silver;

b) Defendant GAYLEN RUST was not licensed to sell securities, trade commodities or operate a commodity pool;

c) The securities/commodities offered and sold were not registered with the Utah Department of Securities or exempt from such;

d) Defendant GAYLEN RUST was not licensed or qualified to render investment advice;

e) Investor funds were not collateralized by silver;

f) Defendants GAYLEN RUST, DENISE RUST, and JOSHUA RUST laundered investor funds through transfers in and out of their personal accounts; and

g) Investment account statements provided to investors were false and not based on actual silver trades.

14. It was further part of the conspiracy that in order to convince investors and potential investors that their investments were profitable and to convince potential investors that the silver trading program was earning money, defendants GAYLEN RUST, DENISE RUST, and JOSHUA RUST operated the trading program as a "Ponzi scheme." That is, defendants GAYLEN RUST, DENISE RUST, and JOSHUA RUST used investment money from later investors to pay the promised returns to earlier investors. In this way, defendants GAYLEN RUST, DENISE RUST, and JOSHUA RUST created the false impression that the silver trading program was profitable, that the investments were safe and secure, and that the promised returns were being generated. Defendants GAYLEN RUST, DENISE RUST, and JOSHUA RUST made or caused to be made Ponzi payments of approximately $150 million to investors, representing these payments as profits from the operation of the silver trading program.

## V.   **OVERT ACTS**

15. In furtherance of the conspiracy and in order to achieve the objects of their

conspiracy, the Defendants, aiding and abetting each other, used and caused the use of wire communications in interstate and foreign commerce, to communicate with each other, with banks, and with investors.

16. Defendant DENISE RUST endorsed thousands of checks and made at least approximately $78 million worth of Ponzi payments to investors.

17. Defendant DENISE RUST caused millions of dollars of investor money to be diverted to the R. Legacy Racing bank account over which she had exclusive control. This was the account she used to purchase thoroughbred horses.

18. Defendant GAYLEN RUST made at least approximately $18 million worth of Ponzi payments to investors.

19. Defendant JOSHUA RUST made approximately $4 million worth of Ponzi payments to investors.

20. Overt acts in furtherance of the conspiracy and attempts to further said conspiracy are also outlined below in the allegations and counts charged in this Felony Indictment.

All in violation of 18 U.S.C. § 1349.

### Count 2
### 18 U.S.C. § 1956(h)
### (Money Laundering Conspiracy)

21. All of the factual allegations set forth in this Felony Indictment are incorporated by reference and realleged as though fully set forth herein.

22. Beginning in and around 1996 and continuing to and around November 15, 2018, within the Central Division of the District of Utah and elsewhere,

**GAYLEN DEAN RUST,**
**DENISE GUNDERSON RUST, and**
**JOSHUA DANIEL RUST**

defendants herein, did knowingly and intentionally combine, conspire, confederate, and agree with each other to:

(a) conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, wire fraud and securities fraud, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i); and

(b) engage in monetary transactions by, through and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is wire fraud and securities fraud, contrary to Title 18, United States Code, Section 1957.

23. In furtherance of the conspiracy and to effect its illegal objects, GAYLEN RUST, JOSHUA RUST, AND DENISE RUST did the following things, among others, in the Central Division of the District of Utah and elsewhere:

24. Defendants GAYLEN RUST, DENISE RUST, and JOSHUA RUST opened personal bank accounts at Zions Bank on or about January 25, 2016, and began actively utilizing these accounts to launder fraud proceeds.

25. Defendant GAYLEN RUST opened 3 personal bank accounts at Zions Bank (account numbers ending in 9537, 6731 and 6756). Between January 2016 and October 2018, through a series of approximately 240 wire transactions, defendant GAYLEN RUST laundered

$17,997,892.84 of investor money via these personal accounts.

26.     Defendant JOSHUA RUST opened 2 personal bank accounts at Zions Bank (account numbers ending in 6772 and 6764). Between January 2016 and October 2018, through a series of approximately 300 wire transactions, defendant JOSHUA RUST laundered $13,666,874.17 of investor money via these personal accounts.

27.     Defendant DENISE RUST opened 2 personal bank accounts at Zions Bank (account numbers ending in 7515 and 6749). Between January 2016 and October 2018, through a series of approximately 187 wire transactions, defendant DENISE RUST laundered $12,887,402.02 of investor money via these personal accounts.

All in violation of 18 U.S.C. § 1956(h).

**Counts 3-4**
**15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. § 240.10b-5**
**(Securities Fraud)**

28.     All of the factual allegations set forth in this Felony Indictment are incorporated by reference and realleged as though fully set forth herein.

29.     Beginning in and around 1996 and continuing to and around November 15, 2018, within the Central Division of the District of Utah and elsewhere,

**GAYLEN DEAN RUST**,

defendant herein, willfully and knowingly, directly and indirectly, by the use of means and instruments of interstate commerce, and of the mails, and of the facilities of national securities exchanges, used and employed manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (1) employing a device, scheme, and artifice to defraud; (2) making untrue statements of material fact and omitting to state material facts necessary in

order to make the statements made, in light of the circumstances under which they were made, not misleading; and (3) engaging in acts, transactions, practices, and courses of business which would operate and did operate as a fraud and deceit upon other persons, in instances including but not limited to each count below:

| COUNT | DATE (on or about) | USE OF INTERSTATE MEANS |
|---|---|---|
| 3. | 09/29/2016 | Email from defendant GAYLEN RUST (grust@rustcoin.com) to investor S.M. stating, "Last fall there were changes made to the trading accounts because of the increased volatility creating smaller trades. Because of the small nature of the trades they have changed the fee process as well. We will no longer be able to group small accounts into one and each account will have a $75.00 fee taken out instead of the $225. They also made the change of the minimum amount for each account raising it from 2000 to 4000 oz's. As we have been making these changes to all of our accounts we have found that those accounts with only 2000 oz's trading (the minimum 50% per trade) are not always gaining silver when the $75.00 fee is taken out. So that we can be efficient we have raised the minimum to 6000 oz's trading 3 so the paperwork can be done in a timely fashion. I have updated your account ... with out the fee but going forward we will need to bring you up to our minimum requirements if we are to continue trading for you. These are your options. Raise the amount of silver in your account to a minimum of 6000 oz's. Take delivery of the current oz's in your accounts. Or sell the silver and have us send you a check closing your account. Please let me know what you would like us to do." |
| 4. | 01/05/2017 | Wire transfer of $30,000.00 from victim C.S. to the Rust Rare Coin Zion's Bank account ending in xxx3564. |

All in violation of 15 U.S.C. §§ 78j(b), 78ff, 17 C.F.R. § 240.10b-5 and 18 U.S.C. § 2(b).

**Count 5**
**18 U.S.C. § 1957 and 2(b)**
**(Money Laundering)**

30. All of the factual allegations set forth in this Felony Indictment are incorporated by reference and realleged as though fully set forth herein.

31. On or about the dates enumerated in each count below, in the Central Division of the District of Utah, and elsewhere,

**DENISE GUNDERSON RUST,**

defendant herein, did knowingly engage and attempt to engage in the following monetary transactions in criminally derived property of a value greater than $10,000.00, and were derived from the specified unlawful activities of Wire Fraud and Securities Fraud, in instances including but not limited to each count below:

| COUNT | DATE (On or About) | MONETARY TRANSACTIONS |
|---|---|---|
| 5. | 04/09/2018 | Transfer of $34,000.00 from money victim R.T. invested in the silver trading program to R Legacy Racing account ending in 3580 (memo description: "Per Denise Rust"). |

All in violation of 18 U.S.C. § 1957 and 2(b).

## Count 6
## 18 U.S.C. § 1957 and 2(b)
### (Money Laundering)

32. All of the factual allegations set forth in this Felony Indictment are incorporated by reference and realleged as though fully set forth herein.

33. On or about the dates enumerated in each count below, in the Central Division of the District of Utah, and elsewhere,

**JOSHUA DANIEL RUST,**

defendant herein, did knowingly engage and attempt to engage in the following monetary transactions in criminally derived property of a value greater than $10,000.00, and were derived from the specified unlawful activity of Wire Fraud and Securities Fraud, in instances including but

not limited to each count below:

| COUNT | DATE (On or About) | MONETARY TRANSACTIONS |
|---|---|---|
| 6. | 01/11/2018 | Online wire transfer of $100,000.00 from money victim B.S. invested in the silver trading program to defendant JOSHUA RUST's personal Zions Bank account ending in 6772. |

All in violation of 18 U.S.C. § 1957 and 2(b).

NOTICE OF INTENT TO SEEK FORFEITURE

Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of any offense charged herein in violation of 18 U.S.C. § 1349 and 15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. § 240.10b-5, the defendant shall forfeit to the United States of America all property, real or personal, that constitutes or is derived from proceeds traceable to the scheme to defraud or conspiracy to commit the same. The property to be forfeited includes, but is not limited to, the following:

- A money judgment representing the value of any property, real or personal, constituting or derived from proceeds traceable to the scheme to defraud or conspiracy to commit the same and not available for forfeiture as a result of any act or omission of the defendant(s) for one or more of the reasons listed in 21 U.S.C. § 853(p).
- Substitute property as allowed by 28 U.S.C. § 2461(c) and 21 U.S.C. § 853(p).

Pursuant to 18 U.S.C. § 982(a)(1), upon conviction of any offense charged herein in violation of 18 U.S.C. § 1956 and 1957, the defendant shall forfeit to the United States of America any property, real or personal, involved in such offenses, and any property traceable to such property. The property to be forfeited includes, but is not limited to, the following:

- A money judgment equal to all property involved in the money laundering charges and not available for forfeiture as a result of any act or omission of the defendant(s) for one or more of the reasons listed in 21 U.S.C. § 853(p).

- Substitute property as allowed by 18 U.S.C. § 982(b) and 21 U.S.C. § 853(p).

A TRUE BILL:

/S/
FOREPERSON OF THE GRAND JURY

JOHN W. HUBER
United States Attorney

JACOB J. STRAIN
CARL D. LESUEUR
TYLER L. MURRAY
Assistant United States Attorneys